UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSE RAY DANIELS,

                                     Plaintiff,          Case # 19-cv-06788

v.                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.
_____

## INTRODUCTION

On January 29, 2013, Plaintiff Jesse Ray Daniels protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[1] 84-93. The Social Security Administration ("SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge Brian Kane (the "ALJ") on October 24, 2014. Tr. 72-83. At the hearing, Plaintiff requested to amend the disability onset date due to an existing Workers' Compensation claim stemming from a 2005 injury. Tr. 79. The hearing was adjourned until the Workers' Compensation claim was resolved. Tr. 81. On February 5, 2015, the ALJ held a second hearing wherein Plaintiff testified. Tr. 24-70. Soon after, Plaintiff amended his onset date to December 8, 2010. *See, e.g.*, Tr. 12.

On April 24, 2015, the ALJ issued an unfavorable decision. Tr. 12-18. The Appeals Council denied Plaintiff's request for review and the decision was appealed to this District on August 15, 2017, where it was soon remanded for further proceedings pursuant to a stipulation between the parties. Tr. 1210-12. The Appeals Council then issued an order directing the ALJ upon remand to (i) "[g]ive further consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence," (ii)

---

[1] "Tr." refers to the administrative record in this matter. ECF Nos. 5, 6, 7.

"[d]etermine whether the claimant has a severe physical or mental impairment," and (iii) "[p]roceed through the relevant steps of the sequential evaluation process." Tr. 1207-08. The ALJ held another hearing on December 21, 2018, but failed to schedule a medical expert in accordance with the Appeal Council's Order. *See* Tr. 1202. As such, the hearing was adjourned. Tr. 1202-03.

On June 7, 2019, the ALJ held another hearing wherein non-examining medical experts Richard Anderson, Ph.D., and Steven Golub, M.D., testified. Tr. 1162-95. The ALJ issued an unfavorable decision on July 2, 2019. Tr. 1142-53. The decision was not appealed to the Appeals Council and became the final decision of the Commissioner. Plaintiff then appealed to this Court.[2]

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

---

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above for the period of time at issue, from the amended onset date of December 8, 2010 to the date last insured of September 30, 2011.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date.  Tr. 1144.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, degenerative joint disease, and cardiac disease.  Tr. 1145.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairments.  Tr. 1146-47.  The ALJ found that Plaintiff retained the RFC to perform light work except that Plaintiff could lift up to 25 pounds occasionally and could stand for up to two to three hours and walk up to four hours in an eight-

hour workday. Tr. 1147. The ALJ also determined that Plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. *Id.* Finally, the ALJ determined that Plaintiff was limited to frequent balancing, stooping, kneeling, crouching and crawling, and would need to avoid all exposure to unprotected heights. *Id.*

In formulating the RFC, the ALJ gave "little weight" to Plaintiff's treating physician Andrew Selinger, M.D., because there was "nothing in the record to suggest that [Plaintiff's] condition worsened" at the alleged onset date. Tr. 1149. The ALJ also found the opinion of Dr. Selinger was not supported by the evidence in the record. *Id.* On the contrary, the ALJ gave "great weight" to Dr. Golub, the non-examining medical expert who reviewed Plaintiff's medical records but did not ever evaluate Plaintiff, and provided a medical opinion regarding the suggested residual functional capacity which the ALJ deemed to be "consistent with the treatment record." Tr. 1150. Likewise, Dr. Selinger's opinion of Plaintiff's mental limitation was allocated "no weight," while the opinion of Dr. Anderson, a non-examining medical expert, was afforded "great weight," based on his review of the records. Tr. 1145, 1149.

At steps four and five, the ALJ concluded that there were jobs that existed during the relevant time period which Plaintiff could have performed. Thus, the ALJ found Plaintiff was not disabled.

**II.     Analysis**

Plaintiff takes issue with the ALJ's treatment of medical opinion evidence. Specifically, Plaintiff argues that the ALJ (1) failed to give "good reasons" for rejecting the disability-supporting opinion of Plaintiff's treating physician, (2) the ALJ failed to evaluate the opinions of Todd Deneen, Psy.D., and Adam Brownfeld, Ph.D., who were ordered to provide opinions by the Appeals Council, and (3) the ALJ failed to incorporate Plaintiff's impairments of depression and

anxiety into the RFC determination.  *See* ECF No. 12-1 at 21-30.  Because the Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other arguments.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."[3]  20 C.F.R. §§ 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so.  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).

The ALJ failed to properly apply the above factors in assigning a designation of "little weight" to Plaintiff's treating physician, Dr. Selinger.  *See* Tr. 1149.  Plaintiff saw Dr. Selinger for over twenty-five years.  *See* Tr. 54.  In a 2013 residual functional capacity questionnaire—which contained Dr. Selinger's opinions of Plaintiff's limitations that had been in place since December 8, 2010, Tr. 1138—Dr. Selinger opined that Plaintiff would only be able to sit for five to ten

---

[3] These regulations were applicable at the time Plaintiff filed his claim.

minutes at a time and stand for five to ten minutes at a time. Tr. 636. Based on Dr. Selinger's experience with Plaintiff, in an eight-hour day, Plaintiff would be able to stand/walk for less than two hours and sit for about two hours. Tr. 637. He opined Plaintiff would need to walk around every 20 minutes for two to three minutes at a time and would require the ability to shift positions at will and take hourly breaks. *Id.* Dr. Selinger determined that any prolonged sitting would require Plaintiff to elevate his legs hourly. *Id.* He further opined that Plaintiff could not lift or carry 10, 20, or 50 pounds. *Id.* Dr. Selinger also opined that Plaintiff would only be able to twist, stoop, crouch, climb ladders, and climb stairs occasionally. Tr. 638. The ALJ discounted this opinion by Dr. Selinger on the conclusory basis that the evidence did not support the opinion and there was not sufficient evidence that Plaintiff's condition worsened at the time of alleged onset date. The ALJ also discounted Dr. Selinger's opinion of Plaintiff's mental health on the basis that Dr. Anderson, a non-examining medical expert, found Plaintiff had no more than "mild" limitations. These are not "good" reasons for rejecting the opinion of Plaintiff's treating physician.

As an initial matter, the ALJ did not "explicitly consider . . . the frequency, length, nature, and extent of treatment" that Plaintiff had with Dr. Selinger, as is required when determining whether a treating physician's opinion will be given anything less than controlling weight. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (other citations omitted). While it is true the ALJ recognized at the hearing that Dr. Selinger was Plaintiff's long-time treating physician, "merely acknowledging" the existence of the treating relationship is *not* the same as considering the "frequency, length, nature, and extent of the treatment." *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020). Indeed, the Second Circuit made clear in *Ferraro* that the explicit consideration of the various factors of the treating relationship is of particular concern where the relationship involves numerous visits, over a stretch of years, wherein the physician is continuously developing and

monitoring the individual's treatment plans. *See Ferraro*, 806 F. App'x at 15. Here, Plaintiff testified that he treated with Dr. Selinger for over 25 years and that Dr. Selinger was familiar with his various issues including his back, knees, and rotator cuff. Tr. 54-55. The records show Dr. Selinger was also treating Plaintiff for his depression and heart issues. *See, e.g.*, Tr. 731-32. Plaintiff testified Dr. Selinger would provide him with a variety of treatments including, for example, cortisone shots in his shoulder, elbow, and knee. Tr. 55. This is precisely the type of circumstance in which the Second Circuit has made clear explicit discussion of the frequency, length, nature, and extent of the treatment is required by the ALJ. *See Ferraro*, F. App'x at 15. Nevertheless, the ALJ failed to explicitly consider or discuss any of these factors in deciding the weight to apply to Dr. Selinger's opinions here. This was clear error and contrary to the well-established considerations to be made when an ALJ decides not to give a treating physician's opinion controlling weight.

It is also not accurate to find that the evidence did not support the opinions provided in Dr. Selinger's questionnaire. On remand, the Appeals Council directed the ALJ to "specifically identify the evidence that contrasts with [Dr. Selinger's] opinion." Tr. 1206. While the ALJ explained that the treatment records from 2010 to 2011 do "not support the retrospective opinion of Dr. Selinger," there are many records, which the ALJ does not address, that in fact support Dr. Selinger's conclusions. For example, in 2010, Dr. Gerald Becker opined that Plaintiff had chronic back pain, and had "a very limited work capacity that would at best be part-time sedentary." Tr. 799. He also noted that Plaintiff had ongoing knee problems and aggravated syndromes caused by a "recent cardiac surgery." *Id.* Dr. Selinger's September 2010 records indicate Plaintiff's active problems included lower back pain, coronary artery disease, neuralgia, and restless leg syndrome. Tr. 731. The record also indicates ongoing plans to treat Plaintiff's coronary artery disease and

back pain with medication and potential injection. Tr. 732. Moreover, there are additional records in the years prior which support Dr. Selinger's opinions. *See, e.g.*, Tr. 277 (Plaintiff requiring the use of a cane); Tr. 698 (same); Tr. 332 (significant limitations in Plaintiff's function due to back and leg discomfort); Tr. 301 (significant spasms and limited motion in all directions); Tr. 779 (Plaintiff underwent coronary artery bypass). As the Appeals Council previously stated, "it is unclear why recent treatment was necessary" to determine whether Dr. Selinger's opinion should be given weight. Tr. 1206. The ALJ's decision simply does not provide sufficient "good reasons" for giving Dr. Selinger, Plaintiff's long-time treating physician, little weight, and Dr. Golub, a non-examining medical examiner, great weight, given the available medical evidence. Tr. 1150.

Moreover, the ALJ's application of "no weight" to Dr. Selinger's opinion regarding Plaintiff's anxiety and depression is in error. Indeed, the Second Circuit just recently explained that the concern that an ALJ should not rely on consultative physicians after a single exam is "even more pronounced in the context of mental illness." *Estrella*, 925 F.3d at 98. Here, rather than give any weight to Dr. Selinger's opinion, the ALJ afforded Dr. Anderson, a psychologist who never treated Plaintiff and merely reviewed his records, "great weight" as it pertained to Plaintiff's mental impairments. Tr. 1145. In support of this decision, the ALJ discussed that Dr. Anderson's opinion was based off records which indicated Plaintiff had "mild" anxiety during the relevant time period and records which indicated that medication had allowed his depression and anxiety to be "stable" and "controlled." *Id.* However, Dr. Anderson also testified that Plaintiff was being prescribed Clonazepam, which is typically prescribed when "there are symptoms of – very severe" anxiety. Tr. 1170. Moreover, Dr. Anderson only pointed to two pieces of evidence in the record in support of his findings, including a January 2012 record and a 2002 record, *see* Tr. 1167, despite there being numerous records demonstrating Plaintiff's treatment for depression and anxiety. *See,*

*e.g.*, Tr. 678, 724, 726, 730, 731.  A non-examining psychologist's one-time testimony based on a review of two medical records simply cannot be deemed sufficient "good reason" to wholly reject the long-time treating physician's opinion.  *See Estrella*, 925 F.3d at 97 ("'[I]t is error for an ALJ to pick out a few isolated instances of [mental illness] improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.'" (quoting *Garrison v. Colvin*, 759 F3d 995, 1017 (9th Cir. 2014)) (other citation omitted)); *see also Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 508 (S.D.N.Y. 2014) (recognizing the ALJ has a heightened duty of explanation when disregarding a treating physician's opinion).

Finally, the ALJ gave little weight to Dr. Selinger's opinions on the basis that there was "nothing in the record to suggest that [Plaintiff's] condition worsened at [the onset date]."  Tr. 1149.  However, it was made clear in both Plaintiff's prior filings and testimony at the hearing, that the specific onset date was not based on his worsening condition, but rather was amended to prevent any overlap with his Workers' Compensation claim.  *See* Tr. 79, 210; 20 C.F.R. § 404.408(a)(2) (benefits are offset by receipt of Workers' Compensation benefits).  The Commissioner asserts that in reaching the conclusion, the ALJ simply found no reason why Dr. Selinger came up with the restrictions applicable at the onset date, based on Plaintiff's medical records, and states in conclusory fashion that such a conclusion is "supported by the record."  ECF No. 16-1 at 19.  Yet, the ALJ's own decision runs contrary to this assertion.  For example, the ALJ notes that Plaintiff's records show that prior to the onset date Plaintiff was treated for "multiple conditions," including a compression fracture in his back, a permanent loss of use of his back, complex tear in the meniscus, the ability to only perform sedentary work, and a horizontal tear of the lateral meniscus.  *See* Tr. 1149.  The assertion by the Commissioner that such records did not support any "possible reason" for Dr. Selinger's opinion is contrary to the available evidence.

9

More importantly, if that was in fact the ALJ's finding based on the records, it was not made clear in the ALJ's decision. Thus, again, this cannot constitute a "good reason" for providing little weight to Dr. Selinger's opinion.

Instead of providing great weight to Plaintiff's treating doctor, Dr. Selinger, the ALJ improperly relies on the opinion of a non-examining physician, Dr. Golub, and non-examining psychologist, Dr. Anderson. Even when a non-examining opinion, such as Dr. Golub or Dr. Anderson's, is given great weight, "it alone cannot be considered substantial evidence, nor can it constitute a 'good reason' for the limited weight given to a treating source opinion." *Tammy H. v. Comm'r of Soc. Sec.* No. 5:18-CV-851, 2019 WL 4142639, at *11 (N.D.N.Y. Aug. 30, 2019) (citing *Walters v. Berryhill*, No. 3:16-CV-2113, 2018, WL 2926575, at *7 (D. Conn. June 11, 2018)); *see also Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." (internal quotations omitted)); *but see Ellett v. Comm'r of Soc. Sec.*, 1:06-CV-1079, 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011) ("Although '[t]he Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence,' these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record." (quoting *Velazquez v. Astrue*, No. 06-CV-0343, 2008 WL 4911765, *1 (W.D.N.Y. Nov. 13, 2008)) (other citations omitted)). Given that the ALJ relied primarily on the opinions of non-examining consultants and there is significant evidence to the contrary, the Court does not find there to be sufficiently good reasons for the ALJ to afford Dr. Selinger's treating opinion anything less than the required controlling weight. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." (quoting another source)).

The Commissioner insists that under a "searching review of the record," the Court will find that "the substance of the treating physician rule was not traversed." *See Estrella*, 925 F.3d at 96. The Commissioner's argument borders on *post hoc* rationalization. The evidence and rationale the Commissioner offers may have supported the conclusion that Dr. Selinger's opinion should receive little weight, however, when the Court is presented with reasons not considered by the ALJ in applying the treating physician rule, the Court is "not permitted to accept the Commissioner's post-hoc rationalizations for the ALJ determination." *White v. Saul*, 414 F. Supp. 3d 377, 385 (W.D.N.Y. 2019).

The ALJ's failure to properly weigh Dr. Selinger's opinion was not harmless error. Contrary to the opinion of Dr. Selinger, the RFC permitted Plaintiff to stand for up to two to three hours, walk for up to four hours, allow for the occasional climbing of stairs or ramps and frequent balancing, stooping, kneeling, crouching and crawling. Tr. 1147. The RFC would allow for Plaintiff to perform "light work," except lifting up to 25 pounds occasionally, whereas Dr. Selinger's limitations rendered Plaintiff incapable of lifting anywhere near 25 pounds. *See* Tr. 637. Indeed, had the ALJ incorporated Dr. Selinger's opinion into the RFC, Plaintiff would not even be able to lift less than ten pounds. Moreover, the RFC does not even take into consideration Plaintiff's stress limitations, while Dr. Selinger specifically opined Plaintiff was "incapable of even 'low stress' jobs." Tr. 636. Because ALJ did not inquire about the impact of such limitations on Plaintiff's ability to work, it is unclear whether such limitations would affect Plaintiff's ability to work and the error is not harmless. While consulting the vocational expert during the hearing, the ALJ did not inquire into the more restrictive limitations offered by Dr. Selinger, such as never lifting more than five pounds, to determine if sufficient jobs existed under those restrictions. Tr.

61-64.  Nor did the ALJ inquire whether Plaintiff's stress-based limitations impacted whether sufficient jobs existed.  *Id.*  Based on the reasons discussed above, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 12, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 16, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 22, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court